UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
FEDERAL INSURANCE COMPANY,

                        Plaintiff,

        -against-                          MEMORANDUM & ORDER
                                           13-CV-0137(JS)(ARL)
MARLYN NUTRACEUTICALS, INC.,[1]

                        Defendant.
------------------------------------X
APPEARANCES
For Plaintiff:      Gregory A. Tsonis, Esq.
                    Joseph J. Cooke, Esq.
                    Milber Makris Plousadis & Seiden, LLP
                    1000 Woodbury Road, Suite 402
                    Woodbury, NY 11797

For Defendant:      Martin Edward Karlinsky, Esq.
                    Karlinsky LLC
                    570 Lexington Avenue, Suite 1600
                    New York, NY 10022

SEYBERT, District Judge:

        Currently pending before the Court are: (1) plaintiff

Federal Insurance Company's ("Plaintiff" or "Federal") motion

for summary judgment,[2] and (2) defendant Marlyn Nutraceuticals,

Inc.'s ("Defendant" or "Marlyn") motion for partial summary

judgment.  For the following reasons, Federal's motion is

GRANTED and Marlyn's motion is GRANTED IN PART and DENIED IN

PART.

_____

[1] The caption incorrectly names Defendant as Marlyn
Neutraceuticals, Inc.  The Clerk of the Court is directed to
amend the docket to reflect the correct spelling.

[2] Federal's motion seeks summary judgment on its claims, but does
not address all of Marlyn's counterclaims.

## BACKGROUND

### I. Factual Background[3]

Federal is an insurance company engaged in the business of issuing fire, marine, and casualty insurance. (Pl. Am. 56.1 Resp. Stmt. ¶ 2.) Marlyn is a manufacturer and seller of customized vitamin and nutritional supplement products. (Def. Am. 56.1 Stmt. ¶ 4.) In 2009, Federal issued a "Customarq Series Life Sciences Insurance Policy" (the "Policy") to Marlyn, covering the period of October 5, 2009 to October 5, 2010. (Pl. 56.1 Stmt. ¶ 1.)

During this same general time period,[4] non-party NBTY Acquisition, LLC d/b/a Leiner Health Products ("NBTY") placed several orders with Marlyn to purchase effervescent probiotic tablets. (Pl. 56.1 Stmt. ¶ 3.) Marlyn then set out to fulfill those orders. Accordingly, it obtained a chelate product from Kelatron Labs, Inc. ("Kelatron"), which it incorporated into its effervescent probiotic tablets. (Def. 56.1 Stmt. at 8.) Marlyn then packaged and sold the tablets to NBTY, who in turn sold the tablets in their original packaging to retail stores. (Pl. 56.1 Stmt. ¶¶ 4-5.)

---

[3] The following facts are drawn from the parties' Local Rule 56.1 Statements ("56.1 Stmt.") and the exhibits attached thereto and submitted therewith.

[4] Specifically, purchase orders were placed between September 25, 2009 and December 23, 2009. (Pl. 56.1 Stmt. ¶ 3.)

Later, it was discovered that the Kelatron product was contaminated with and contained soy protein. (Def. 56.1 Stmt. at 9.) On August 17, 2010, NBTY sent a notice to its vendors recalling the tablets. (Pl. 56.1 Stmt. ¶ 6.) Thereafter, NBTY notified Marlyn, and Marlyn notified Federal. (Pl. 56.1 Stmt. ¶¶ 7-8.) On November 5, 2010, NBTY filed an action against Marlyn in Suffolk County Supreme Court (the "Underlying Action"). (Pl. 56.1 Stmt. ¶ 10.)

According to Federal, "NBTY alleges in the Underlying Action that Marlyn sold effervescent probiotic tablets which it erroneously represented to be soy free and thus did not conform with the purchase orders pursuant to which those tablets were sold" and therefore seeks "economic damages." (Pl. 56.1 Stmt. ¶¶ 11-12.) According to Marlyn, NBTY seeks to recover for property damage sustained by NBTY and for alleged loss due to NBTY's product. (Def. 56.1 Stmt. at 15.)

"On November 24, 2010, Marlyn tendered a copy of the Complaint in the Underlying Action to Federal for defense and indemnification under the Policy." (Pl. 56.1 Stmt. ¶ 13.) Relevant portions of the Policy provide as follows:

> A. Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
>
> 1. imposed by law; or
> 2. assumed in an **insured contract**;

3

> for **bodily injury** or **property damage** caused
> by an **occurrence** to which this coverage
> applies.
>
> . . .
>
> This insurance does not apply to **property
> damage** to **your product** arising out of it or
> any part of it.
>
> This insurance does not apply to **property
> damage** to **your work** arising out of it or any
> part of it.

(Gray Aff., Docket Entry 20-1, Ex. A at Form 80-02-2085, pp. 3,

15[5].)

On December 28, 2010, Federal sent Marlyn a letter

(the "Reservation Letter") accepting the defense of the

Underlying Action but reserving its right to withdraw. (Pl.

56.1 Stmt. ¶ 14.) This letter stated in part that "Federal will

defend Marlyn in this Complaint under a reservation of rights.

The Complaint contains allegations that we need to bring to your

attention, since the damages sought are not covered." (Gray

Aff. Ex. G at 1.) It went on to state that "certain of the

damages set forth [in the Underlying Action], if documented,

could constitute **property damage**, as defined, caused by an

**occurrence**, as defined. Since you reported the recall of these

products as a Notice of Circumstances, the claim will be deemed

---

[5] For ease of reference, the Court cites solely to the Gray
Affidavit where appropriate, although Marlyn has also provided
many of these documents as attachments to the Cirel Declaration.
(<u>See</u> Docket Entry 24.)

to have been made during the 10/5/2009 – 10/5/2010 policy period." (Gray Aff. Ex. G at 4.) However, the Reservation Letter also noted that certain of the damages claimed in the Underlying Action appeared to be subject to the "your product" and/or "your work" exclusions. (Gray Aff. Ex. G at 6.)

On July 12, 2012,[6] NBTY filed a Verified Amended Complaint in the Underlying Action essentially asserting the same allegations and causes of action as in the original Complaint. (Pl. 56.1 Stmt. ¶ 16.) On July 23, 2012, NBTY provided a Verified Bill of Particulars in the Underlying Action. (Pl. 56.1 Stmt. ¶ 17.) The subsequently revised categories of damages listed by NBTY are "Credit to Customer For Product Returned or Destroyed," "Inventory Cost-Inventory on Hand," "Storage Cost," "Cost of Recall," and "Legal Fees." (Pl. 56.1 Stmt. ¶ 25; see Gray Aff. Ex. K.)

## II. Procedural Background

Federal commenced this action on January 9, 2013, seeking a judicial determination as to whether and, if so, to what extent, it has coverage obligations to Marlyn for the Underlying Action. In additional, Federal seeks to recover

---

[6] In May 2012, Kelatron commenced an action against Marlyn in Utah state court seeking a declaratory judgment that Kelatron had fully performed its contractual obligations (the "Kelatron Action"). (Def. 56.1 Stmt. at 12.) By letter dated May 22, 2012, Federal denied coverage regarding the claims in the Kelatron Action. (Def. 56.1 Stmt. at 16.)

attorneys' fees incurred in defending the Underlying Action to date.

In response, Marlyn has asserted two counterclaims. At their core, Marlyn alleges breach of contract and seeks damages for Federal's refusal to defend in the Kelatron Action and anticipated withdrawal in the Underlying Action and seeks a declaratory judgment that Federal is obligated to defend and indemnify in both actions.

DISCUSSION

Federal moves for summary judgment seeking a declaration that it has no duty to defend or indemnify Marlyn in connection with the Underlying Action. Maryln moves for partial summary judgment on its counterclaim for a declaration of Federal's obligation to provide a defense in the Underlying Action and to dismiss Federal's Complaint for declaratory relief and damages as to its duty to defend Marlyn in that suit. The Court will first address the applicable standard of review before turning to the parties' motions.

## I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

7

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

## II. Duty to Defend Generally[7]

An insurer's duty to defend an insured is broad and "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." Stein v. N. Assurance Co. of Am., 495 F. App'x 108, 110 (2d Cir. 2012) (internal quotation marks and citation omitted); see Int'l Bus. Machs. Corp., 303 F.3d at 424

---

[7] The Court will assume that New York law applies given the parties' briefs. See Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins., 303 F.3d 419, 423 (2d Cir. 2002) ("The parties' briefs assume that New York law controls this dispute, and such implied consent . . . is sufficient to establish choice of law." (internal quotation marks and citation omitted)).

("Under New York [l]aw, it is axiomatic that the duty to defend is 'exceedingly broad' and more expansive than the duty to indemnify."); <u>Am. Auto. Ins. Co. v. Security Income Planners & Co.</u>, 847 F. Supp. 2d 454, 460 (E.D.N.Y. 2012) ("Under New York law, an insurer has an 'exceedingly broad' duty to defend the insured."). If the policy is ambiguous, the court must resolve the ambiguity in favor of the insured. <u>Stein</u>, 495 F. App'x at 110. "In addition, an insurer may only disclaim its duty to defend if it has demonstrated, as a matter of law, that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." <u>Id.</u> (internal quotation marks and citation omitted).

The duty to defend depends upon the allegations in the complaint and a comparison of those allegations to the policy at issue. <u>Id.</u> "However, '[t]he insurer's duty to defend is . . . not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy.'" <u>Id.</u> (quoting <u>Sturges Mfg. Co. v. Utica Mut. Ins. Co.</u>, 37 N.Y.2d 69, 74, 371 N.Y.S.2d 444, 449, 332 N.E. 2d 319, 323 (N.Y. 1975) (alterations in original)).

Here, Federal maintains that there is no possible basis upon which it can be held to indemnify Marlyn. Marlyn, however, asserts that there are factual issues that preclude

summary judgment at this stage regarding indemnification and that, therefore, Federal has a duty to defend. Thus, the Court turns to the Policy's provisions and exclusions.

III. <u>"Occurrence" and "Property Damage" Under the Policy</u>

Federal maintains that the damages sought in the Underlying Action are not "property damage caused by an occurrence" and thus are not covered by the Policy. (Federal's Br. in Support, Docket Entry 20-17, at 3.) Marlyn, in contrast, argues in its motion for partial summary judgment that Federal has a duty to defend because "at the very least, NBTY's complaint suggests a 'reasonable possibility' of coverage." (Marlyn's Br. in Support, Docket Entry 23, at 13.) The Court agrees with Federal.

The Policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Gray Aff. Ex. A at Form 80-02-2085 p. 38.) It defines "property damage" in the following manner:

> [1] physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at a time of the physical injury that caused it; or [2] [the] loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

(Gray Aff. Ex. A at Form 80-02-2085, p. 39.)

Federal makes three main arguments in support of its proposition.  <u>First</u>, that "coverage provided by a CGL policy [<u>i.e.</u>, General Commercial Liability policy, such as that here] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."  (Federal's Br. in Support at 5.)  <u>Second</u>, that "Marlyn's alleged failure to provide a product in conformance with NBTY's specifications is simply not an 'accident'" and therefore not an "occurrence" under the Policy. (Federal's Br. in Support at 7.)  <u>Third</u>, that NBTY's claims do not meet the definition of "property damage" because damaged property must belong to someone other than the insured. (Federal's Br. in Support at 10.)  Marlyn, in contrast, contends that the damages NBTY seeks in the Underlying Action are not necessarily economic damages solely for a breach of contract and that the terms "occurrence" and "property damage" in the Policy are ambiguous.

Initially, Federal is correct in that "[t]he general rule is that a commercial general liability insurance policy does not afford coverage for breach of contract . . . ." <u>Structural Bldg. Prods. Corp. v. Bus. Ins. Agency</u>, 281 A.D.2d 617, 619, 722 N.Y.S.2d 559, 562 (2d Dep't 2001); <u>see</u> <u>Franco Belli Plumbing & Heating & Sons, Inc. v. Liberty Mut. Ins. Co.</u>,

No. 12-CV-0128, 2012 WL 2830247, at *6 (E.D.N.Y. Apr. 19, 2012)
("CGL policies--including the policy at issue--generally do not
cover breach of contract actions, since claims for bodily injury
or property damage are not presented."). The Amended Verified
Complaint in the Underlying Action lists the causes of action as
sounding in breach of contract, breach of express warranty,
breach of implied warranty, negligent or fraudulent
misrepresentation, contractual indemnification, and attorneys'
fees. (See generally Gray Aff. Ex. H.) While Marlyn may take
issue with how Federal has "characterized" the claims at issue,
in fact damages such as those alleged in the Underlying
Complaint are exactly what other courts have said are solely
economic damages for a breach of contract. See Jakobson
Shipyard, Inc. v. Aetna Cas. & Sur. Co., 961 F.2d 387, 389-90
(2d Cir. 1992) (affirming summary judgment in favor of insurer
regarding insurer's obligation to defend in underlying breach of
warranty action); Structural Bldg. Prods. Corp., 281 A.D.2d at
619-20, 722 N.Y.S.2d at 562 ("alleged causes of action sounding
in lost profits, extra costs due to delay and performance of
extra work, breach of contract, breach of warranty, negligence,
negligent misrepresentation and fraud, and false advertising"
were not covered by general liability insurance policy).

Federal further asserts that the Underlying Action
does not involve an "occurrence" as defined by the Policy.

Marlyn contends that "occurrence" should be construed as the Second Circuit defined the term in _Aetna Casualty & Surety Co. v. General Time Corp._, 704 F.2d 80, 82 (2d Cir. 1983). (Marlyn's Opp. Br., Docket Entry 30, at 13.) There, the Second Circuit noted that "[t]he term 'accident' must be construed as the ordinary person or businessman would construe it when purchasing insurance coverage, _i.e._, as meaning an unexpected, unfortunate occurrence." _General Time Corp._, 704 F.2d at 82 (internal quotation marks and citations omitted). However, more recent, and more directly analogous, cases have distinguished _General Time Corp._ For example, in _J.Z.G. Resources, Inc. v. King_, 987 F.2d 98 (2d Cir. 1993), the Second Circuit held that _General Time Corp._ was distinguishable because in _General Time Corp._ "the claim against the insured was not simply one for faulty workmanship, but rather one for consequential property damage inflicted upon a third party as a result of the insured's activity." 987 F.2d 98, 102 (2d Cir. 1993). Similarly, in _Jakobson Shipyard_, the Second Circuit distinguished the case before it from _General Time Corp._ because in _General Time Corp._, a defective product caused damage to other property whereas "[t]he faulty steering mechanisms in the instant case did not damage property other than the tugs purchased from Jakobson under the contractual arrangements in question." 961 F.2d at 389-90. Moreover, the Circuit specifically noted that a breach

of contract, even if unintentional, is not an "accident" or "chance occurrence." Id. at 389.

The Court finds that this case falls squarely into the purview of precedential cases such as J.Z.G. Resources and Jakobson Shipyard.[8]  See also Franco Belli Plumbing, 2012 WL 2830247, at *6 ("Breach of contract or warranty is only an 'occurrence' if, as a result of the breach, the defective product damages property other than the defective product itself."). Here, there is no dispute that NBTY resold the effervescent probiotic tablets as is. (See Def. 56.1 Resp. ¶ 5 (admitting that "NBTY sold the effervescent probiotic tablets in their original packaging to retail stores such as CVS and Wal-Mart.").)  Thus, any soy contamination in the tablets is a product defect causing damage to the tablets themselves, and not an instance in which damage has occurred to other property.[9]

Additionally, Federal correctly asserts that NBTY's claims do not meet the definition of "property damage."  Once

---

[8] Such precedent also demonstrates that Marlyn's assertion that "occurrence" is ambiguous is unavailing.  See Jakobson, 961 F.2d at 389 (finding no ambiguity in nearly identical provision because "[w]ere we to construe the words 'accident' or 'continuous or repeated exposure to conditions' as encompassing damage to a product resulting from the product's failure to perform according to contract specifications, we would expand the agreed-upon coverage").

[9] To the extent that the Verified Amended Complaint in the Underlying Action also included language regarding damage to inventory, and thus implicated damage to other property, the Court will address these arguments in Section IV.

again, Federal's argument pertains to "property damage" as meaning damage to other property rather than damage to the product itself. See <u>Franco Belli Plumbing</u>, 2012 WL 2830247, at *7 ("Alternatively, where the only 'damage' claimed is to the defective product itself, courts have found there is no 'property damage' triggering the duty to defend." Thus, for essentially the same reasons that the claims in the Underlying Action do not fit the definition of an "occurrence," they certainly do not fit the definition of "property damage caused by an occurrence."

IV. <u>"Your Product" and "Your Work" Exclusions Under the Policy</u>

Federal further argues that, even if the damages sought in the Underlying Action could be construed as covered under the Policy, they are excluded under the "your product" and "your work" provisions. (Federal's Br. in Support at 11.) The Court agrees.

"To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion." <u>Stein</u>, 495 F. App'x at 110 (internal quotation marks and citation omitted).

The Policy provides, in relevant part:

> *Damage To Your Product*[:] This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

*Damage To Your Work*[:] This insurance does not apply to **property damage** to **your work** arising out of it or any part of it.

. . .

Your product:
A. means any:
　　1. goods or products (other than real property), including:
　　　　a. **information and network technology products**;
　　　　　　　　and
　　　　b. **life sciences products**;
manufactured, sold, handled, distributed or disposed of by:
- you;
- others trading under your name; or
- a person or organization whose assets or business you have acquired;
　　2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products; and

. . .

B. includes:
　　1. representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product**; and
　　2. the providing of or failure to provide instructions or warnings.

**Your work**:
A. means any:
　　1. work or operations, including **information and network technology services** and **life sciences product services**, performed by:
　　　　a. you or on your behalf; or
　　　　b. a person or organization whose assets or business you have acquired; and
　　2. materials, parts or equipment furnished in connection with such work or operations.

B.  includes:
        1.  representations or warranties made at
    any time with respect to the durability,
    fitness, performance, quality or use of **your
    work**; and
        2. the providing of or failure to provide
    instructions or warnings.

(Gray Aff. Ex. A at Form 80-02-2085, pp. 15, 39-40.)

        Federal maintains that even though the Verified
Complaint in the Underling Action seeks solely economic
damages, it had initially agreed to defend Marlyn because the
Verified Complaint also included an allegation that NBTY had
suffered "damage to inventory." (Federal's Br. in Support at 3
(quoting Gray Aff. Ex. B, ¶¶ 33, 62, 86, 97, 104).) However,
Federal now moves for summary judgment because "[a]s the
pleadings were amplified by a Bill of Particulars and additional
discovery was conducted, it became apparent that the 'damage to
inventory' language related only to the tablets sold by Marlyn
to NBTY." (Federal's Br. in Support at 3.) Therefore, Federal
argues that even if NBTY's claims may be covered by the Policy,
the Bill of Particulars conclusively shows that allegations in
the Underlying Action are wholly within the "your product" and
"your work" exclusions. Marlyn argues that the "your product"
and "your work" exclusionary clauses fail to relieve Federal of
its duty to defend because "they are inapplicable to the facts

and too vague to be capable of enforcement." (Marlyn's Br. in Support at 18.)

The Court finds that the Bill of Particulars in the Underlying Action makes clear that the only damages NBTY seeks are for the product itself. Exhibit A of the Bill of Particulars lists NBTY's total damages as $1,899,026.96 plus $123,632.18 in attorneys' fees. (Gray Aff. Ex. I.) In the attached "Tab 1," NBTY lists the categories of damages as "Credit to Customer (August 2010 thru December 2011)," "Inventory Cost (August 31, 2010)," "Storage Cost (July 2010 thru February 2012)," "Interest Due on Customer Credits," and "Interest Due on Inventory on Hand." (Gray Aff. Ex. I.) NBTY then revised the damages in Exhibit A and listed the categories of damages as "Credit to Customer (August 2010 thru December 2011)," "Inventory Cost (August 31, 2010)," and "Storage Cost (July 2010 thru September 2012)" for a total "Cost of Recall" plus "Legal Fees." (Gray Aff. Ex. K.) The "Inventory Cost" refers to the effervescent probiotic tablets that NBTY purchased but that were contaminated with soy. (See Gray Ex. K; Federal's Br. in Support at 16-17.) Such damages leave no room for damages to inventory of NBTY's products or other property and instead relate solely to the costs of crediting consumers due to the recall, the tablets themselves, and storage.

In fact, Marlyn never points to any other property, besides the tablets themselves, that NBTY claims was damaged. Rather, it has argued potential ambiguities in the Policy and its exclusions. However, by its own admission "[i]f the Exclusions have any meaning, . . . they mean simply what they say: that if the injury and loss was to Marlyn's product alone, it is excluded from coverage and Marlyn may not require indemnity from its carrier." (Marlyn's Br. in Support at 19.) As the losses alleged in the Underlying Action pertain only to Marlyn's product, there is no duty to indemnify and accordingly no duty to defend.

Marlyn's arguments in support of its motion for partial summary judgment and in opposition to Federal's motion for summary judgment are unavailing. Marlyn argues, in part, that the Policy covers NBTY's claims and the exclusions do not apply because "[t]he contaminated product that Marlyn sold and delivered to NBTY was integrated into and became NBTY's product, and it was that resultant property of NBTY that was harmed to the extent that its market value to NBTY was reduced following the recall and related remedial measures." (Marlyn's Br. in Support at 20.) In support of this argument, Marlyn cites to Sturges Mfg. Co. v. Utica Mut. Ins. Co., in which New York's Court of Appeals held that "[w]hen one product is integrated into a larger entity, and the component product proves

defective, the harm is considered harm to the entity to the extent that the market value of the entity is reduced in excess of the value of the defective component." 37 N.Y.2d at 72-73, 371 N.Y.S.2d at 447, 332 N.E.2d at 322. However, Marlyn's characterization of the facts in the Underlying Action is unsupported and belied by the Bill of Particulars. In fact, Marlyn admits that NBTY resold the tablets unchanged. (Def. 56.1 Resp. ¶ 5.) Where, as here, the damage is to the insured's property, which was not incorporated into any larger entity, courts have found that exclusions such as the "your product" exclusion in the Policy defeat any duty to defend. See Tradin Organics USA, Inc. v. Maryland Cas. Co., 325 F. App'x 10, 11 (2d Cir. 2009) ("Because Tradin's claim was based on damage to Tradin's product--a risk specifically excluded by the 'Your Product' provision--Maryland properly denied coverage of the claim."); Hartog Rahal P'ship v. Am. Motorists Ins. Co., 359 F. Supp. 2d 331, 333 (S.D.N.Y. 2005) (granting summary judgment in the insurance company's favor under a "your product" exclusion); Chubb Ins. Co. of N.J. v. Hartford Fire Ins. Co., No. 97-CV-6935, 1999 WL 760206, at *8 (S.D.N.Y. Sept. 27, 1999) (noting the distinction between when the damage is to the product itself or when the product is integrated into a larger entity for purposes of determining whether an "occurrence" has occurred).

Marlyn further argues that "your product" and "your work" are ambiguous. However, as the aforementioned analyses--and precedent within this Circuit--demonstrate, such exclusionary provisions are neither new nor ambiguous. See Tradin Organics USA, Inc. v. Maryland Cas. Co., No. 06-CV-5494, 2008 WL 241081, at *3 (S.D.N.Y. Jan. 29, 2008) ("New York courts, as well as courts in other jurisdictions, have held that similarly defined 'your product' exclusions unambiguously preclude coverage for losses caused by a contaminated or defective product sold by the insured." (collecting cases)), aff'd 325 F. App'x 10 (2d Cir. 2009); Hartog Rahal P'ship, 359 F. Supp. 2d at 333 (noting that the very purpose of such an exclusion is to "exclude coverage for damage to the insured's product," and not to create a "performance bond" (internal quotation marks and citation omitted)); Lowville Producer's Dairy Coop. v. Am. Motorists Ins. Co., 198 A.D.2d 851, 852, 604 N.Y.S.2d 421 (4th Dep't 1993) (finding exclusion regarding "property damage to the named insured's products arising out of such products or any part of such products" to be unambiguous).

Accordingly, Federal's motion for summary judgment insofar as it seeks a declaration that it has no duty to defend or indemnify Marlyn in connection with the Underlying Action is GRANTED and Marlyn's motion for partial summary judgment insofar

as it seeks a declaration that Federal has a duty to defend it in the Underlying Action is DENIED.

V.  Recoupment of Defense Costs

Finally, Marlyn also seeks summary judgment on Federal's claim to recover defense costs expended in connection with the Underlying Action. For the following reasons, the Court finds that Marlyn is entitled to summary judgment in this regard.

On this point, both parties cite to Federal's Reservation Letter, in which Federal agreed to defend Marlyn in the Underlying Action subject to a reservation to withdraw from the defense. (Gray Aff. Ex. G at 8.) As Marlyn correctly notes, courts that have granted an insurance company reimbursement of defense costs have typically done so pursuant to an explicit reservation of such a right. See, e.g., Max Specialty Ins. Co. v. WSG Investors, LLC, No. 09-CV-5237, 2012 WL 3150579, at *8 (E.D.N.Y. Apr. 20, 2012) ("Max Specialty made an explicit reservation of the right to pursue recoupment in its letter to WSG disclaiming coverage."); Gotham Ins. Co. v. GLNX, Inc., No. 92-CV-6415, 1993 WL 312243, at *4 (S.D.N.Y. Aug. 6, 1993) ("Gotham's reservation of rights letter explicitly advised GLNX that it reserved its right to seek reimbursement in the event of a determination that it had no duty to defend."). The

Reservation Letter, however, contained no such explicit reservation. (Gray Aff. Ex. G.)

Federal offers no case law to the contrary and, instead, points to cases regarding advancement of defense costs rather than a duty to defend. (See Federal's Opp. Br., Docket Entry 31, at 1-2.) In this case, however, the Policy explicitly provides that Federal "will have the right and duty to defend [Marlyn] against a suit, even if such suit is false, fraudulent or groundless." (Gray Aff. Ex. A at Form 80-02-2047, p. 4; Id. at Form 80-02-2085, p. 6.) The duty to defend is broad and does not end unless the insurance company demonstrates, as a matter of law, "that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." Stein, 495 F. App'x at 110 (internal quotation marks and citation omitted). Thus, as the Reservation Letter itself acknowledged, NBTY's allegations in the Underlying Action initially left open the possibility of coverage. It was not until discovery in the Underlying Action was complete and NBTY made clear its allegations and bases for damages that the duty ended. As such, Marlyn was entitled to a defense afforded by Federal, and Federal's claim for recoupment cannot stand. See Scottsdale Ins. Co. v. R.I. Pools, Inc., 710 F.3d 488, 492 (2d Cir. 2013) ("Because this duty [to defend] exists up until the point at which it is legally determined that

there is no possibility for coverage under the policies, Scottsdale [Insurance Company] has not shown entitlement to any reimbursement for defense costs it previously expended).

Accordingly, Marlyn's motion insofar as it seeks summary judgment on Federal's claim for recoupment of defense costs is GRANTED.

CONCLUSION

For the foregoing reasons, Federal's motion for summary judgment is GRANTED and Marlyn's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Federal's motion insofar as it seeks a declaration that it has no duty to defend or indemnify Marlyn in connection with the Underlying Action is GRANTED and Marlyn's motion for partial summary judgment insofar as it seeks a declaration that Federal has a duty to defend it in the Underlying Action is DENIED. Marlyn's motion insofar as it seeks summary judgment on Federal's claim for recoupment of defense costs is GRANTED.

Additionally, the Clerk of the Court is directed to amend the caption to reflect that Defendant is Marlyn Nutraceuticals, Inc., not Marlyn Neutraceuticals, Inc.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     December __19__, 2013
           Central Islip, NY